**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MELISSA FIELDS, et al.,

                         Plaintiffs,

v.                                           CIVIL ACTION NO.   2:22-cv-00426

UNITED STATES OF AMERICA,

                         Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   (ECF No. 10.)   For the reasons discussed below, the motion is **GRANTED**.

*I.      BACKGROUND*

Deputy Michael King ("Deputy King") is a Deputy Sheriff from Roane County, West Virginia, who also served as a Special Deputy on the C.U.F.F.E.D. Task Force of the United States Marshals Service ("USMS").   (ECF No. 4 at 3, ¶ 11; ECF No. 10 at 2, ¶ 5.)   As this Court has previously recognized, Deputy King is no stranger to civil rights actions in both state and federal courts for negligence, excessive force, and a host of other claims.   *Fields v. King*, 576 F. Supp. 3d 392, 398 (S.D. W. Va. 2021).   This particular civil action arises from the shooting death of Michael Nichols ("Nichols") during an encounter with Deputy King on October 22, 2020.   (ECF No. 1.)

1

In fact, this is the second civil action Plaintiff Melissa Fields—as the personal representative of the Estate of the Decedent—has filed regarding Nichols's death.   In *Fields v. King*, Plaintiff asserted the following factual allegations:

> On October 22, 2020, the Decedent was alone at his home in rural Roane County, West Virginia, where he resided by himself. The Decedent's closest neighbors, Jimmy and Selena Parsons, lived approximately 200 yards away from his home. Mrs. Parsons called Deputy King on his cell phone while he was off duty about the Decedent during the day of October 22, 2020. The Parsons did not call 911 or the Sheriff's office to report any issues regarding the Decedent or otherwise, and instead spoke only privately with Deputy King on his cell phone.
>
> Although Deputy King subsequently called the 911 center, Plaintiff alleges he did not provide the center with sufficient information about Mrs. Parsons' communication. The 911 center was not given detail regarding the nature of Mrs. Parsons' call regarding the Decedent, Deputy King's plans to respond to the situation, or any other information sufficient to inform the 911 center's workers as to the situation. Instead, Deputy King only asked if certain other officers were on duty, and—when told that those officers were not available—responded to the Decedent's residence alone by himself. Deputy King then proceeded to the Decedent's residence without formally marking-up on-duty and without obtaining a warrant. Upon information and belief, Deputy King was not dressed in his uniform and was not wearing a body camera.
>
> As Deputy King arrived, the Decedent—a slight, older man who was unarmed and did not own any firearms—was standing on his well-lit front porch. Plaintiff alleges that a large streetlight directly overhead would have made it easy for Deputy King to see that the Decedent presented no imposing threat, and certainly would not have been a threat to an armed deputy of Deputy King's physical stature. The Complaint does not allege what events transpired between the moment Deputy King arrived at the Decedent's residence and the moment the Decedent was killed. Nevertheless, Deputy King shot the decedent three times—once in the chest, once at a downward angle through his side into his pelvis, and once by placing his gun barrel against the Decedent's cheek and shooting him through the face downward into his chest cavity.

576 F.Supp.3d at 397.

Plaintiff initially filed suit against Deputy King, Roane County Sheriff L. Todd Cole ("Sheriff Cole"), and the Roane County Commission on February 4, 2021.  *Id.*  She asserted

claims against the Roane County Commission for (1) vicarious liability for Deputy King's actions, and (2) negligent training, supervision, investigation, discipline, and retention of Deputy King. *Fields v. King,* 2:21-cv-00090 (ECF No. 1 at 16–18, ¶¶ 75, 79, 80).   The parties eventually reached a settlement, *id.* (ECF Nos. 92, 99), and Plaintiff voluntarily dismissed the case, *id.* (ECF No. 101).

Despite initially arguing that Deputy King was acting as a sheriff's deputy under the Roane County Commission, Plaintiff has since changed course and is now asserting that Deputy King was acting as a Special Deputy of the USMS at the time of Nichols's shooting.

On September 30, 2022, Plaintiff filed her Complaint in the present action, (ECF No. 1), and on October 20, 2022, Plaintiff filed a First Amended Complaint alleging various claims under the Federal Tort Claims Act ("FTCA") against the United States of America, (ECF No. 4).   While the bulk of the factual allegations involving Nichols's shooting are identical to Plaintiff's previous lawsuit, Plaintiff now claims that Deputy King was working "full-time" for the USMS, went to Nichols's residence "in his USMS truck," and was "wearing a vest and other gear provided by USMS."   (*Id.* at 3–4, ¶¶ 11, 15.)   Based on these facts, Plaintiff asserts two familiar claims against the United States under the FTCA: (1) vicarious liability for Deputy King's negligence, (2) direct liability for negligent training, supervision, investigation, discipline, and retention of Deputy King.[1]   (*Id.* at 15–18.)

On December 30, 2022, Defendant filed the pending motion to dismiss.   (ECF No. 10.) Plaintiff filed a response, (ECF No. 13), and Defendant filed a reply, (ECF No. 16).   As such, this motion is fully briefed and ripe for adjudication.

---

[1]  The Court has warned Plaintiff's counsel multiple times that this "shotgun approach" with respect to the causes of action alleged in Count II of the Amended Complaint violate Federal Rules of Civil Procedure 8(d)(1) and 10.   *See, e.g.*, *King*, 576 F. Supp. 3d at 400 n.2.   The Court will, for the last time, warn Plaintiff's counsel that "[f]uture pleadings and individual counts in such condition [will] be stricken by this Court."   *Id.*

## II.    *LEGAL STANDARDS*

A.  *Rule 12(b)(1)*

It is axiomatic that a court must find it has jurisdiction before determining the validity of any claims brought before it.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).   A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. "The burden of showing the existence of subject matter jurisdiction rests on the plaintiff."  *Adkins v. United States*, 923 F. Supp. 2d 853, 857 (S.D. W. Va. 2013) (citation omitted).   "If the plaintiff fails to meet this burden, then the claim must be dismissed."  *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (citing *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)).

"Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: 'facial attacks' and 'factual attacks.'"  *Adkins v. United States*, 923 F. Supp. 2d 853, 856 (S.D. W. Va. 2013) (quoting *Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986)).   A "facial challenge" claims that the facts in the complaint are simply insufficient to establish subject matter jurisdiction.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)).   In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Id.* (quoting *Adams*, 697 F.2d at 1219).   Thus, "the facts in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Id.*

If, on the other hand, the defendant makes a factual challenge and asserts the plaintiff's jurisdictional allegations are simply untrue, the plaintiff's allegations are given less procedural protection.  *Id.* (citation omitted).   In those cases, the court ordinarily does not apply the

4

presumption of truthfulness, and the court may "decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In doing so, the "court may then go beyond the allegations of the complaint and *in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." *Id.* (internal quotation marks and citation omitted; italics in original).

Yet, a third situation exists when facial and factual challenges are indivisible because "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Id.* at 193 (internal quotation marks and citations omitted). In those instances, a court should presume the truthfulness of the allegations. *Id.* Additionally, the court should provide "the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Id.*

In summary, the Fourth Circuit held that for facial challenges "the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id.* For factual challenges, "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.* For inextricably intertwined challenges, "the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Id.* (citation omitted).

B. *Rule 12(b)(6)*

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 554–55 (2007).   A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.   In applying this standard, a court must utilize a two-pronged approach.   First, it must separate the legal conclusions in the complaint from the factual allegations.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged."   *Id.*   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.

### III.   *DISCUSSION*

In the pending motion, Defendant simultaneously argues that Plaintiff's claims must be dismissed under both Rule 12(b)(1) and Rule 12(b)(6) for a multitude of reasons.   (ECF No. 10.) Plaintiff disputes all Defendant's arguments.   (ECF No. 13.)   The Court will address Defendant's Rule 12(b)(1) arguments before considering its Rule 12(b)(6) arguments.

### A.   *Rule 12(b)(1)*

The FTCA waives the United States' sovereign immunity and allows suits against the federal sovereign for personal injuries caused by government employees acting within the scope

6

of their employment.   *See* 28 U.S.C. § 1346(b), § 2671 *et seq.*   In the pending motion, Defendant argues that the Court lacks subject matter jurisdiction because Deputy King was not acting in his capacity as a Special Deputy of the USMS at the time of the shooting of Nichols.   (ECF No. 11.) Defendant alternatively argues that the Court lacks subject matter jurisdiction even if Deputy King was acting as a Special Deputy of the USMS at the time of the shooting because the discretionary function exception ("DFE") to the FTCA applies.   (*Id.* at 13–20.)   Each theory is addressed in turn.

1.   Federal Employee Acting within the Scope of his Employment

An "employee of the Government" includes "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."   28 U.S.C. § 2671.   A federal agency for FTCA purposes is defined as "the executive departments, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States."   *Id.*   The question of whether an actor is an "employee" of the United States is determined by federal law.   *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995) (citing *Logue v. United States*, 412 U.S. 521, 528 (1973)). Conversely, whether an employee is "acting within the scope of his office or employment" is a question of state law.   *Ross v. Bryan*, 309 F.3d 830, 833 (4th Cir. 2002).

Here, Defendant argues that, under the terms of Deputy King's appointment, he was not acting in his official capacity as a Special Deputy of the USMS at the time of the shooting and, thus, was not within the definition of "employee" under the FTCA.   (ECF No. 11 at 8–9.) Defendant attached over five-hundred pages of exhibits to its memorandum in support, which

purport to define the scope of Deputy King's employment as a Special Deputy of the USMS.   (*See* ECF Nos. 10-1 to 10-4.)   Defendant describes its argument as a "factual challenge" and claims that the Court can properly consider these exhibits under Rule 12(b)(1).   (ECF No. 16 at 1–3.)

However, whether Deputy King was an employee of the United States at the time of Nichols's shooting is also intertwined with "the facts central to the merits of the dispute."[2]   *Kerns*, 585 F.3d at 193.   As such, the "facial and factual challenges are indivisible," and Plaintiff's jurisdictional allegations are presumed truthful.   *See id.*   Therefore, the Court will not consider Defendant's exhibits, and Defendant's argument fails.[3]   *See id.*

2.   <u>Discretionary Function Exception</u>

The DFE "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."   *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)

---

[2] State law applies to the analysis of a tort claim under the FTCA.   28 U.S.C. § 1346(b)(1).   Under West Virginia law, "[i]t is always incumbent upon one who asserts vicarious respondeat superior liability to make a prima facie showing of the existence of the relation of master and servant or principal and agent or *employer and employee*." *Sanders v. Georgia–Pacific Corp.*, 225 S.E.2d 218, 222 (W. Va. 1976) (emphasis added).   To state a claim for negligent supervision or training under West Virginia law, "a plaintiff must show that an *employer* failed to properly supervise an *employee* and, as a result, the employee proximately caused injury to the plaintiff."   *Lester v. City of Gilbert*, 85 F. Supp. 3d 851, 865 (S.D. W. Va. 2015) (emphasis added).   And the West Virginia Supreme Court of Appeals applies the following test for a claim based on negligent hiring under West Virginia law:

> [W]hen the *employee* was hired or retained, did the *employer* conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E. 2d 502, 506 (W. Va. 1998) (internal citations omitted) (emphasis added).   Thus, Plaintiff's claims involve Deputy King's status as an employee of the United States.

[3] Defendant also argues that Plaintiff is collaterally estopped from claiming that King was acting in his official capacity as a special deputy of the USMS.   (ECF No. 11 at 10–13 (citing *Fields v. King*, 2:21-cv-00090 (ECF No. 78).)   The Court will consider this argument below, as collateral estoppel is an affirmative defense and is treated as a basis for dismissal under Rule 12(b)(6).   *See Davani v. Virginia Dept. of Tans.*, 434 F.3d 712, 720 (4th Cir. 2006) (res judicata or claim preclusion challenge is to be considered pursuant to Rule 12(b)(6)).

(internal quotations and citations omitted).   The exception "assure[s] protection for the Government against tort liability for errors in administration or in the exercise of discretionary functions."   *Dalehite v. United States*, 346 U.S. 15, 26–27 (1953) (citation omitted).   Under the DFE, the waiver of sovereign immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).   The Supreme Court has established a two-step analysis to ascertain whether the DFE applies in any given case.   *See United States v. Gaubert*, 499 U.S. 315, 322 (1991).

First, courts consider whether the conduct at issue "involves an element of judgment or choice."   *Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015).   Conduct involves an element of judgment or choice unless a "federal statute, regulation, or policy *specifically prescribes* a course of action for an employee to follow."   *Berkovitz*, 486 U.S. at 536 (emphasis added); *see also Pornomo v. United States*, 814 F.3d 681, 691 (4th Cir. 2016) (explaining that the source of the directive must either expressly prescribe or proscribe "a particular course of action" in order to eliminate an agency's discretion for the purposes of the discretionary function exception).   For example, an absence of discretion cannot be demonstrated by either a document that sets forth recommended actions or improvements, *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180–81 (4th Cir. 2009), or a regulation that, although requiring adherence to a general standard, fails to dictate a course of action for achieving that standard, *see Rich*, 811 F.3d at 145 (explaining that nothing in the relevant regulation "requires that any specific action be taken by the various prison officials").

Second, courts consider whether the conduct at issue "involve[d] the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537. This inquiry focuses "not on the agent's subjective intent . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324. If the challenged actions or omissions satisfy those two steps, the government's conduct is considered "discretionary within the meaning of the exception," and courts lack jurisdiction "whether or not the discretion involved be abused." *Pornomo*, 814 F.3d at 687 (quoting 28 U.S.C. § 2680(a)).

Under this framework, "[p]laintiffs bear the burden of proving that the discretionary function exemption does not apply." *Indemnity Ins. Co. of North America*, 569 F.3d at 180. "If the plaintiff fails to meet this burden, then the claim must be dismissed." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). Additionally, the FTCA is strictly construed with ambiguities resolved in favor of the United States. *See United States v. Nordic Village, Inc.*, 503 U.S. 30-34 (1992); *see also Bulger v. Hurwitz*, 62 F.4th 127, 142 (4th Cir. 2023) ("[W]aivers of sovereign immunity must be strictly construed.").

Here, Defendant argues that the United States' decisions regarding employing, training, supervising, investigating, and disciplining Deputy King as a Special Deputy of the USMS falls within the discretionary function exception. (ECF No. 11 at 18–20.) For the first prong, Defendant asserts that there are no mandatory statutes, regulations, or policies that apply to the way in which USMS hires, supervises, retains, or terminates special deputies of the USMS. (*Id.*

10

at 19.)   For the second prong, Defendant states that "the way in which the USMS retains, supervises, manages, disciplines, investigates, and trains its special deputies requires the consideration of many challenging factors, including available resources, agency objectives, and public policy."[4]   (*Id.*)

On the other hand, Plaintiff contends that the first prong is not satisfied.   (ECF No. 13 at 15–17.)   Plaintiff argues that the USMS violated the policy[5] that applicants for Special Deputy of the USMS "should not be under internal investigation by their employer."   (*Id.* at 16 (quoting ECF No. 10-1 at 11).)   If there is an investigation, policy states that "a written explanation regarding the circumstances of the investigation and what caused it should be sent to [the USMS] along with the application."   (*Id.* (same).)   However, as Defendant notes, (ECF No. 16 at 10), the use of the term "should" is advisory rather than mandatory and does not indicate a mandatory policy under the DFE analysis, *Fortney v. United States*, 714 F.Supp. 207, 208 (W.D. Va. 2007), *aff'd*, 912 F.2d 722 (4th Cir. 1990); *see also Indem. Ins. Co.*, 569 F.3d at 181 (holding that the DFE applied where the procedures in a Marine Safety Manual were "only recommended," not "mandatory").

Plaintiff also questions Defendant's assertion that "[t]he USMS does not investigate or discipline Special Deputies."   (*Id.* at 17 (quoting ECF No. 11 at 6).)   Plaintiff is tilting at windmills here and even confesses that she "does not know whether there are such written policies

---

[4] Defendant also argues that the Fourth Circuit has made it clear that decisions regarding the selection, retention, supervision, management, training, discipline, and investigation involve discretionary conduct and decisions which are protected under the DFE to the FTCA, even when the discretion is exercised allegedly in a negligent manner. (ECF No. 16 at 9–10 (collecting cases).)   However, quite the opposite is true, as the Fourth Circuit has explicitly rejected this argument and held that "the discretionary function exception does not categorically bar negligent hiring, supervision, and retention claims."   *Lins v. United States*, 847 F. App'x 159, 165 (4th Cir. 2021).

[5] Plaintiff also argues that King violated several policies.   (ECF No. 13 at 15–16.)   However, Defendant did not argue that the DFE applies to Plaintiff's vicarious liability claim.   (*See* ECF Nos. 11, 16.)

regarding investigations or prospective or current Special Deputies."  (*Id.* n.6.)   Still, she claims that she is "entitled to discovery to investigate the full panoply of USMS policies—both written and unwritten—as well as other evidence with which to prove her claims."  (*Id.* at 17.)   The Court disagrees.

Whatever issue Plaintiff may have with this alleged policy is immaterial.   If such a policy does not exist, then Defendant's discretionary decision not to investigate or discipline Deputy King is protected by the DFE.   Plaintiff's only potential argument would be that a policy regarding the investigation and discipline of Special Deputies existed.   Yet, despite the fact that Plaintiff bears the burden of proving that the DFE does not apply, she cites no mandatory statute, regulation, or governmental policy regarding investigations on prospective or current Special Deputies.

Further, Plaintiff is not entitled to discovery to investigate "the full panoply of USMS policies," because the merits of Plaintiff's FTCA claims do not involve a USMS policy.  *Cf. Kerns*, 585 F.3d at 193.   Permitting Plaintiff to obtain discovery because she "surmise[s], without basis, the existence of some unspecified mandatory policy or procedure that might have an unexplained bearing on the case . . . would undermine the discretionary function exception and introduce the very litigation pressures that Congress meant to avoid when it developed the exception."  *Bulger v. Hurwitz*, 62 F.4th 127, 145 (4th Cir. 2023) (internal quotation marks and citations omitted); *see also Hager v. United States*, 2020 WL 2544421 (S.D. W. Va. May 19, 2020) ("[A] party is not entitled . . . to go on a fishing expedition to find a basis for subject matter jurisdiction." (internal quotation marks and citations omitted).)   Instead, because Plaintiff cannot meet her burden, "the claim must be dismissed."   *Welch*, 409 F.3d at 651.

Accordingly, Defendant's Motion to Dismiss under Rule 12(b)(1) is **GRANTED** as to Plaintiff's copious theories of negligence under Count Two.

### B. Rule 12(b)(6)

The FTCA enables plaintiffs to recover monetary awards from the United States for injury, property loss, or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope . . . of employment."   28 U.S.C. § 1346(b).   Here, Defendant argues that Plaintiff is collaterally estopped from claiming that Deputy King was acting in his official capacity as a Special Deputy of the USMS at the time of the shooting because this Court previously held that Deputy King was acting in his official capacity as a deputy sheriff with the Roane County Commission at the time.   (ECF No. 11 at 10–13 (citing *Fields v. King*, 2:21-cv-00090 (ECF No. 78).)   More precisely, in *Fields v. King*, Plaintiff conceded her state-law claims against Deputy King and Sheriff Cole on the basis that they acted outside the scope of their employment or official responsibilities with the Roane County Commission.   576 F. Supp.3d at 408.   Thus, Defendant argues that, because Plaintiff should be estopped from arguing that Deputy King was acting as a Special Deputy of the USMS at the time of Nichols's shooting, she cannot state a claim under the FTCA.   (ECF No. 11 at 10–13.)

"Collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom issue preclusion is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (quoting *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994)).   The proponent of collateral estoppel must establish the following five elements:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Id.*; *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213 (4th Cir. 2003).

In this case, Plaintiff seems to argue that the first, second, third, and fifth elements are not met. (ECF No. 13 at 14–15.) Some of Plaintiff's arguments are overlapping and have been consolidated for clarity. Each is discussed in turn.

### 1. An identical issue

For the first element, Plaintiff asserts that Defendant's argument "ignores the dual role that task force officers have as state employees deputized by, and to work, for the federal government." (ECF No. 13 at 14.) As such, Plaintiff argues that, "because deputy sheriff status and deputy marshal status are not mutually exclusive, the issue here is not 'identical' to the prior issue." (*Id.* at 15.) Alternatively, Plaintiff contends that she is entitled to plead arguments in the alternative, which is "precisely what was occurring in the prior . . . litigation, as compared with the allegations against the United States here." (*Id.* at 14 (citing Fed. R. Civ. P. 8(d)(2).) The Court disagrees with both of Plaintiff's arguments.

To start, deputy sheriff status and deputy marshal status are mutually exclusive. After all, "[d]uring the period of assignment," a local government employee who is assigned to a federal agency, like the USMS, "is deemed an employee of the agency for the purpose of . . . the Federal Tort Claims Act and any other Federal tort liability statute." 5 U.S.C. § 3374(c)(2). As such, numerous courts have held that where a local law enforcement official has been deputized as a federal officer, he is either a federal actor or a state actor on a particular occasion in question.

14

*Deavers v. Martin*, No. 2:21-CV-00423, 2022 WL 4348474, at *5 (S.D. W. Va. Sept. 19, 2022) (collecting cases).   Thus, at the time of Nichols's shooting, Deputy King was acting either as a state or federal actor, but not both.   *See id.*

Further, plaintiffs are entitled to set forth alternative arguments "in a single count or defense or in separate ones."   Fed. R. Civ. P. 8(d)(2); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")   However, it *should* go without saying that a plaintiff's ability to offer alternative arguments is limited to a single lawsuit—not separate lawsuits.   For example, in the previous litigation, Plaintiff could have also named the USMS as a defendant and raised alterative claims of liability based on Deputy King's status as either a federal or state actor.   Yet, Plaintiff cannot now twist the Federal Rules of Civil Procedure to provide an end-around for collateral estoppel.

2.   Actually determined and critical to the prior decision

Plaintiff then claims that the Court's prior ruling was not "actually determined" because it was based on the sufficiency of allegations at the pleadings stage as opposed to on the substantive merits of the case.   (ECF No. 13 at 14.)   Plaintiff also asserts that, because the Court's order granting the motion to dismiss "was procedural and not a substantive one on the factual merits, Deputy King's role was not a 'critical and necessary part of the decision.'"   (*Id.* at 15.)   Plaintiff is mistaken.

First, Plaintiff has yet again misunderstood the Federal Rules of Civil Procedure.   "Unless the court in its order for dismissal otherwise specifies," any dismissal under Rule 41(b) "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of the court," and (2) "any dismissal not provided for in [Rule 41], other than a dismissal for lack of jurisdiction, for

improper venue, or for failure to join a party under Rule 19, *operates as an adjudication upon the merits*." Fed. R. Civ. P. 41(b) (emphasis added).   A Rule 12(b)(6) dismissal is not provided for in Rule 41(b) and is not based on lack of jurisdiction, improper venue, or failure to join a party. Thus, the Court's previous dismissal in *Fields v. King* under Rule 12(b)(6) for failure to state a claim indeed operates as an adjudication upon the merits.   *See Andrews v. Daw*, 201 F.3d 521, 525 n.2 (4th Cir. 2000) (stating that under Rule 41(b) a dismissal under Rule 12(b)(6) is a final judgment on the merits for purposes of res judicata).

Second, Deputy King's role was a critical and necessary part of the decision to dismiss part of Plaintiff's state law claims against Sheriff Cole and Deputy King.   The Court noted that under the West Virginia Torts Claims Act ("WVTCA"), employees of political subdivisions are immune from liability except in three instances, including when "[h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities."   *King*, 576 F.Supp.3d at 408 (quoting W. Va. Code § 29-12A-5(b)).   The defendants in that case contended that Plaintiff "made no attempt to allege that Deputy King or Sheriff Cole acted outside the scope of their employment or official responsibilities" with the Roane County Commission.   *Id.*   Plaintiff did not respond to that argument and thus "conceded her state-law claims against Deputy King and Sheriff Cole on the basis that they acted outside the scope of their employment or official responsibilities."   *Id.*   Consequently, the Court dismissed Plaintiff's claims under the WVTCA against Sheriff Cole and Deputy King on the basis that "Deputy King's and Sheriff Cole's actions or omissions were done outside the scope of their employment."   *Id.* at 409.

Thus, Deputy King's role within the scope of his employment with the Roane County Commission was the *entire* basis of the Court's decision to dismiss certain WVTCA claims under Rule 12(b)(6), which is an adjudication on the merits.

### 3. Full and fair opportunity to litigate

Lastly, Plaintiff argues that, because the Court's order granting Deputy King's motion to dismiss came before substantive discovery, Plaintiff did not have a "full and fair opportunity to litigate the issue."  (ECF No. 13 at 15.)  Plaintiff also emphasizes that she did not know that Deputy King was a Special Deputy of the USMS until after the previous complaint was filed. (*See id.* at 14–15.)  These are not persuasive arguments given the procedural history.

For parties to have a full and fair opportunity to litigate, they must "have a fair opportunity procedurally, substantively and evidentially to pursue [their] claim the first time."  *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971) (quotation omitted). Importantly, the party must have had the *opportunity* to litigate; it does not matter if it *chose* not to so litigate.  *See Sartin v. Macik*, 535 F.3d 284, 290 (4th Cir. 2008); *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 332-33 (1979).

Plaintiff undoubtedly had the opportunity to assert a claim against Deputy King for his actions taken outside the scope of his employment with the Roane County Commission.  In Plaintiff's previous complaint, Count Two specifically sought to hold Deputy King liable under the WVTCA "[t]o the extent [his] actions or omissions are deemed to have been outside the scope of his employment."  *King v. Fields*, 2:21-cv-00090 (ECF No. 1 at 20, ¶ 87).  However, as discussed above, Plaintiff abandoned this claim when the defendants challenged it.  The fact that Plaintiff alleges that she did not know that Deputy King was a Special Deputy of the USMS until

after the previous complaint was filed is inconsequential because she could have maintained a claim on the theory that Deputy King was acting outside the scope of his employment with the Roane County Commission.   Thus, Plaintiff had the opportunity—but chose not to—litigate the issue.  *See Sartin*, 535 F.3d at 290.

Therefore, Plaintiff is collaterally estopped from claiming that Deputy King was acting as a Special Deputy of the USMS at the time of Nichols's shooting.   Consequently, because Plaintiff cannot assert that Nichols's death was "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope . . . of employment," 28 U.S.C. § 1346(b), she has failed to state a claim under the FTCA.   Accordingly, Defendant's Motion to Dismiss under Rule 12(b)(6) is **GRANTED** as to Plaintiff's FTCA claim under Count One.

## IV.     CONCLUSION

For these reasons, Defendant's Motion to Dismiss, (ECF No. 10), is **GRANTED**.   No claims remain.   Accordingly, it is **ORDERED** that this civil action is **DISMISSED** and retired from the docket of this Court.   The Court **DIRECTS** the Clerk to remove this matter from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        May 16, 2023

THOMAS E. JOHNSTON, CHIEF JUDGE

18